IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ERNEST BERG,
Administrator of the Estate
of Deceased Jeremy D. Berg,

      Plaintiff,

    v.                   Civil Action No. 2:24-cv-04
                              (KLEEH)

LUCAS GREENWALT, Individually and
in his capacity as an employee of
the Grant County Sheriff's Department,
and GRANT COUNTY COMMISSION,

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 18]

Pending before the Court is Defendants Lucas Greenwalt and Grant County Commission's Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 18]. For the reasons stated herein, Defendants' Motion [ECF No. 18] is **DENIED IN PART AND GRANTED IN PART**.

### I.    PROCEDURAL HISTORY

Plaintiff Ernest Berg, the Administrator of the Estate of Deceased Jeremy D. Berg, ("Plaintiff") filed his initial complaint and accompanying exhibits in this Court on March 21, 2024. ECF No. 1. Defendants Lucas Greenwalt and Grant County Commission (collectively "Defendants") filed a Motion to Dismiss and accompanying Memorandum in Support on May 2, 2024. ECF Nos. 10,

11. Plaintiff filed a response in opposition [ECF No. 12] and an amended complaint on May 15, 2024 [ECF No. 13]. The Amended Complaint alleges (I) 42 U.S.C. § 1983 – Excessive Use of Force; (II) Monell Liability under 42 U.S.C. § 1983; (III) Wrongful Death; and (IV) Negligent Spoliation of Evidence. ECF No. 13. Defendants filed their Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 18] and accompanying Memorandum in Support [ECF No. 19] on June 4, 2024. Defendants moved to dismiss Plaintiff's Monell claim (Count II), Negligent Spoliation claim (Count IV), and Plaintiff's claim for punitive damages. Plaintiff filed his response to the Motion on June 11, 2024, [ECF No. 20] and Defendants replied in support of partial dismissal on June 18, 2024 [ECF No. 21]. The motion is fully briefed and ripe for review.

## II.  FACTUAL BACKGROUND[1]

Plaintiff is the father of Decedent, Jeremy D. Berg ("Berg"), and the duly appointed Administrator of the Estate of Jeremy D. Berg. Amended Compl., ECF No. 13, at ¶ 3. Defendant Greenwalt ("Greenwalt") was at all times relevant hereto employed by the Grant County Sherriff's Department ("GCSD") as a police officer; he is named as a defendant in his individual capacity and as an employee of Grant County Sheriff's Department. Id. at ¶ 7.

---

[1]   For purposes of analyzing the motion to dismiss, the Court assumes that Plaintiff's asserted facts are true.

On March 31, 2022, Greenwalt placed Berg under arrest for the misdemeanor offense of driving under the influence in Grant Country, West Virginia. Id. at ¶ 48. After the arrest, Greenwalt claimed that Berg became aggressive and hostile, and stated that Berg threatened to kill Greenwalt. Id. at ¶ 49. Greenwalt transported Berg to the GCSD's holding cell in the Grant County Courthouse Annex ("Annex") for processing following the arrest. Id. at ¶ 50. "During transport, Greenwalt claimed Berg further threatened to kill Defendant Greenwalt 'by ripping [his] eye balls out of any [sic] head and then torture [him] to death.'" Id. at ¶ 52. Upon arriving at the Annex, Berg allegedly refused to exit the police vehicle and was "talking out of his mind." Id. at ¶ 64.

Shortly thereafter, Greenwalt transported Berg from the Annex to Grant Memorial Hospital for a blood test. Id. at ¶¶ 62, 68-69. During this transport, Greenwalt claims that Berg kicked at the cruiser door and, again, threatened to torture and kill Greenwalt. Id. at ¶ 71. Approximately twenty-five minutes after arriving at the hospital, Greenwalt and Berg left the Emergency Department to return to the Annex. Id. at ¶ 78. Again, Greenwalt claims that Berg kicked at the cruiser door and was belligerent during transport. Id. at ¶ 82. Back at the Annex, Greenwalt states that he was required to check on Berg in the holding cell "a couple of times" due to Berg yelling in the cell. Id. at ¶ 85. At some point, Greenwalt entered the holding cell and advised Berg of the charges

of Driving Under the Influence and Obstructing. Id. at ¶ 88. Greenwalt informed Berg that he would be transported to the jail. Id. Greenwalt claims Berg then threatened him and stated he would be a "dead man" when Berg was released from jail. Id. at ¶ 89. Greenwalt additionally claims that he agreed to handcuff Berg in the front after Berg promised to be polite during transport to the jail. Id. at ¶ 91. Allegedly, Greenwalt warned Berg that if Berg caused any problems during transport, Greenwalt would pull over and move the handcuffs to the rear, using only one set of handcuffs. Id. at ¶ 93.

Greenwalt states that that upon placing Berg in his vehicle, Berg refused to be seat belted in the vehicle. Id. at ¶ 95. Plaintiff asserts that, upon information and belief, Greenwalt transported Berg in the police cruiser while Berg was handcuffed in front and not seat belted in the cruiser. Id. at ¶ 97. During transport to the regional jail, Greenwalt claims that Berg became belligerent and began beating on and kicking the cage Id. at ¶ 105. At this point, Greenwalt did not stop the vehicle, call for backup assistance, or radio dispatch regarding Berg's behavior. Id. at ¶ 106. Greenwalt states that Berg's behavior settled down for about five miles but eventually Berg became belligerent again "and was beating on the cage in the vehicle, yelling, cursing, threatening to kill Defendant Greenwalt, and spitting on Defendant Greenwalt." Id. at ¶ 108. Again, Greenwalt did not stop the

4

vehicle, call for backup assistance, or radio dispatch regarding Berg's behavior. Id. at ¶ 109. After traveling approximately another five miles, Greenwalt radioed the Grant County E-911 Center ("E-911 Center") at 12:15:04 a.m. on April 1, 2022, advising that he would be pulling over at Justamere Road in Hardy County, West Virginia. Id. at ¶¶ 110-11. Greenwalt did not request backup assistance or advise dispatch of Berg's behavior. Id. at ¶ 114.

Greenwalt claimed that he pulled over to remove Berg from the vehicle, place a spit mask on Berg, and move Berg's handcuffs from the front to the rear. Id. at ¶ 112. Greenwalt radioed the E-911 Center again at 12:15:22 a.m. to advise of his location and that he would be out of his vehicle. Id. at ¶ 113. Greenwalt did not request backup assistance or advise dispatch of Berg's behavior. Id. at ¶ 114. After stopping at Justamere Road, Greenwalt claims Berg hit and kicked him as he opened the back passenger door to the cruiser. Id. at ¶ 132. According to Greenwalt, Berg refused to exit the car. Id. Greenwalt states that he warned Berg that he would be "dry stunned" with the GCSD issued taser if Berg did not comply. Id. at ¶ 134. When Berg "fail[ed] to comply with further directions to exit the rear of the vehicle, Defendant Greenwalt drew his GCSD issued taser and activated the taser." Id. After activating the taser, Greenwalt claims that he gave Berg an additional warning. Id. at ¶ 135.

5

Greenwalt claims that as he went to dry stun Berg for noncompliance, Berg disarmed Greenwalt of the taser and tased Greenwalt. Id. at ¶ 141. Greenwalt claims he received the full five second shock of the taser while "body rolling, sliding down the passenger side" of the police cruiser to the rear of the vehicle. Id. at ¶ 144. Greenwalt says that as he was drawing his GCSD issued pistol, Berg tased him a second time, causing Greenwalt to shoot himself in the left forearm as he drew the pistol. Id. at ¶ 150. Greenwalt claims he again received the full five second shock of the taser during this second event. Id. at ¶ 152. Greenwalt recalls that, from his position at the rear of the police cruiser, he shot his pistol two to three times at Berg as Berg was facing Greenwalt. Id. at ¶ 154. Greenwalt then claims Berg yelled and jumped as if he were hit by the gunshots and started "back peddling" around the police cruiser. Id. at ¶ 156.

At this point, Berg allegedly still had the taser in his hand and kept pulling the taser trigger like it was a firearm. Id. Greenwalt states that he continued to chase Berg around the car as Berg was "backing up" and still holding the taser up while it is crackling as if charged. Id. at ¶ 158. Berg backed into the rear passenger door that was still open, causing Berg to drop the taser. Id. at ¶ 160. Greenwalt claims that Berg then spun around, ran "like in slow motion," and bent down to pick up the taser. At this

6

point, Greenwalt shot his pistol three to four more times at Berg. Id. at ¶ 162.

At 12:17:16 a.m. on April 1, 2022, Greenwalt radioed the E-911 Center informing of "shots fired." Id. at ¶ 117. Greenwalt did not respond to the E-911 Center again until 12:19:21 a.m. when he stated "suspect down" and advised that EMS was not necessary. Id. at ¶ 118.

The Annex is equipped with multiple video surveillance cameras monitoring various locations throughout the facility. Id. at ¶ 53. On April 22, 2022, the Grant County Commission ("GCC") and GCSD received letters instructing them to preserve any and all evidence of the custody of Berg on March 31, 2022, including video camera footage from GCSD, Grant County Courthouse, and/or Grant County jail. Id. at ¶ 54. "Plaintiff was provided copies of preserved video camera footage from four of the GCSD Annex's video surveillance cameras purporting to contain all of the video recordings at the Annex of the custody of Jeremy D. Berg on March 31, 2022, through April 1, 2022." Id. at ¶ 55. However, the Complaint asserts that "[t]he video camera footage from the four GCSD Annex's video surveillance cameras provided in response to the FOIA request was missing substantial portions of the recordings of the custody of Decedent Berg." Id. at ¶ 57. The Complaint alleges that "the GCSD failed to preserve all of the GDSD Annex's video surveillance camera footage of the custody of Jeremy D. Berg

7

on March 31, 2022, and allowed the video recorded footage to deleted and recorded over after four months." Id. at ¶ 58. As such, the Plaintiff has not been provided any of the missing video footage. Id. at ¶ 59.

### III. LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only

if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969).

## IV.  DISCUSSION

For the following reasons, Defendants' Partial Motion to Dismiss [ECF No. 18] is **DENIED** as to Plaintiff's claim for negligent spoliation of evidence (Count IV). Defendants' Motion [ECF No. 18] is **GRANTED** as to Plaintiff's claims for <u>Monell</u> liability (Count II) and **GRANTED IN PART AND DENIED IN PART** as to punitive damages.

### A. Count II – 42 U.S.C. §1983 – <u>Monell</u> Liability

Defendants' Partial Motion as to Count II is **GRANTED** because Plaintiff has failed to meet the stringent requirements required to establish municipal liability for police misconduct. A municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658, 694 (1978). "[T]he substantive requirements for establishing municipal liability for police misconduct are stringent indeed. The critical Supreme Court decisions have imposed this stringency in a deliberate effort to avoid the indirect or inadvertent imposition of forms of vicarious liability

rejected in Monell." Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987).

Courts have required plaintiffs to demonstrate "persistent and widespread . . . practices of [municipal] officials," along with the "duration and frequency" – which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." Id. at 1386–91. "Sporadic or isolated violations of rights will not give rise to Monell liability; only 'widespread or flagrant' violations will." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402–03 (4th Cir. 2014) (citation omitted).

"It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (citation omitted). However, the Fourth Circuit has recognized that "a county's failure to adequately train its officers can be so egregious as to warrant a finding that it amounts to a policy or custom for which the county should be held responsible." Guerra v. Montgomery Cty., 118 F. App'x 673, 676 (4th Cir. 2004) (unpublished) (citing City of Canton v. Harris, 489 U.S. 378, 389–90 (1989)).

10

Here, Defendants argue that Plaintiff has failed to allege a pattern of similar constitutional violations to place the GCC on notice of the alleged deficient training. ECF No. 21, at p. 3. Secondarily, Defendants argue that "the Amended Complaint lacks any factual allegations demonstrating this is one of the rare circumstances where a single incident sufficiently placed the Commission on notice of an alleged failure to train." Id.

In contrast, Plaintiff argues that Plaintiff has sufficiently pled a failure to train claim because "the violations [in the Complaint] are more than necessary to support Plaintiff's Monell claim." ECF No. 20, at p. 5. The Complaint alleges that "the acts and omissions of the Defendant GCC were pursuant to the customs, policies, practices, training, and/or procedures of the County Commission of Grant County, via its law enforcement entity, the Grant County Sheriff's Department, and its policymaker(s)." Amended Compl., ECF No. 13, at ¶ 11. Further, the Amended Complaint states that GCSD failed to train its deputies on various policies and protocols, causing "Berg to be unlawfully shot eight times on the side road resulting in his death." Id. at ¶ 194.

The Court finds that Plaintiff has failed to sufficiently plead that the GCC has an official policy, custom, or history that allows the Grant County Sheriff's Department officers to deprive individuals of their constitutional rights. The Amended Complaint includes only conclusory statements that the GCSD failed to train

its deputies on relevant procedures and then cites the facts at issue in this case. There are no allegations in the Amended Complaint that indicate the policymakers had actual or constructive knowledge of the conduct in this case. Plaintiff's Monell claim is based on the assertions that Greenwalt violated GCSD policies during Berg's arrest. This single incident cannot establish Monell liability against the GCC, and in this case, the failure of the GCSD to train its officers, assuming this fact to be true, is not sufficiently egregious to warrant a finding that it amounts to a policy or custom for which the GCC should be held responsible. As such, the Court **GRANTS** the motion to dismiss with respect to Count III and **DISMISSES** it as a matter of law.

### B. Count IV – Negligent Spoliation of Evidence

Defendants' Partial Motion to Dismiss as to Count IV is **DENIED** because GCC is a third party to all of Plaintiff's remaining claims. West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action. Hannah v. Heeter, 584 S.E.2d 560, 566–67 (W. Va. 2003). While "it is a fundamental principle of law that a party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence," "when the alleged spoliator is a party to the underlying litigation, sufficient remedies already exist to compensate the party injured by the negligent spoliation." Tracy v. Cottrell, 524 S.E.2d 879,

12

887 (W. Va. 1999); Hannah, 584 S.E.2d at 566-67. When physical evidence is destroyed by a party to an action, adverse inference instructions may be given or sanctions may be imposed under appropriate circumstances. Hannah, 584 S.E.2d at 566-67.

However, a negligent spoliation of evidence claim is viable against a third party. "Unlike a party to a civil action, a third party spoliator is not subject to an adverse inference instruction or discovery sanctions." Hannah, 584 S.E.2d at 568. In West Virginia, to establish a prima facie case of negligent spoliation of evidence by a third party, a plaintiff must prove the following elements:

> (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; and (6) damages.

Syl. Pt. 2, Mace v. Ford Motor Co., 653 S.E.2d 660 (W.Va. 2007) (per curiam). A "[n]egligent spoliation claim can lie when aimed at an entity that is a party to an action but a third party to the

specific claims at issue." <u>Mills v. Cabell Cnty. Bd. of Educ.</u>, No. CV 3:22-0592, 2023 WL 4980553, at *13 (S.D.W. Va. Aug. 3, 2023).[2]

Here, Plaintiff argues that the negligent spoliation claim is against a third party, in that the claim is alleged as to GCC, "which is not a party to the claims to which the spoliated evidence applies." ECF No. 20, at p. 6. Specifically, Plaintiff argues that GCC is a third party to the excessive force and wrongful death claims and, thus, should be held liable for negligent spoliation. ECF No. 20, at p. 7.

In contrast, Defendants argue that, because the GCC is a party to this action, the GCC "is subject to the same remedies as any other party to this action." ECF No. 19, at p. 10. Secondarily, Defendants assert that Plaintiff's third-party theory does not apply to the GCC because the GCC "is alleged to have caused the alleged use of excessive force through its failure to train Deputy Greenwalt and is included within Plaintiff's wrongful death claim." <u>Id.</u> at p. 12.

The Court finds that, although GCC is a party to the civil action, GCC is a third party to the claims for which the spoliated evidence applies. As previously addressed <u>supra</u> Section A, this Court has dismissed the <u>Monell</u> claim against the GCC. Subsequently,

---

[2]    Plaintiff cites this persuasive authority to support his argument. ECF No. 20, at p. 6.

GCC is rendered a third party to the excessive use of force and wrongful death claims positioned against Greenwalt. The remedies available for parties under <u>Hannah</u> are insufficient to compensate Plaintiff for negligent spoliation; an adverse inference instruction could neither attribute the spoliation to Defendant Greenwalt nor could it be aimed at Defendant GCC, as GCC is not a party to these specific claims. Further, Plaintiffs have pleaded facts sufficient to raise a plausible inference that Defendant GCC knew of the existence of a pending or potential civil action, had a duty to preserve the video, spoliated the videos, and the videos were vital to Plaintiff's ability to prevail in his excessive force and wrongful death claims against Defendant Greenwalt. As such, the Court **DENIES** the Defendants' Motion as to Count IV.

### C. Punitive Damages

A municipality or local government unit is "immune from punitive damages under 42 U.S.C. § 1983." <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981). Similarly, under West Virginia Law, "an award of punitive or exemplary damages against [a] political subdivision is prohibited." W. Va. Code § 29-12A-7(a).

Punitive damages are also unavailable in § 1983 actions against officers sued in their official capacities. <u>Edwards v. Ashley</u>, 70 F.3d 111, 1995 WL 668002, at *1 (4th Cir. Nov. 3, 1995) (unpublished). They are, however, available in suits against

officers in their individual capacities. See Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985).

Here, Defendants argue GCC is absolutely immune from punitive damages as a municipal entity. ECF No. 19, at p. 13. Defendants additionally argue that punitive damages are not available against Greenwalt in his official capacity.

Plaintiff argues that he "did not plead a request for punitive damages in either causes of action asserted against Defendant GCC." ECF No. 20, at p. 7. As to Greenwalt, Plaintiff concedes that punitive damages are not available against Greenwalt in his official capacity. However, Plaintiff additionally maintains that punitive damages are available against Greenwalt in his individual capacity. The Amended Complaint states that it "seeks compensatory and punitive damages from Defendants for violating various rights . . . of Jeremy D. Berg," Amended Compl., ECF No. 13, at p. 1.

The Court finds that GCC is immune from punitive damages. Thus, any punitive damages claim in relation to Plaintiff's claims against the GCC are **DISMISSED** for failure to state a claim upon which relief can be granted. Further, because punitive damages are not available against Greenwalt in his official capacity, the motion is **GRANTED IN PART** with respect to punitive damages. At this juncture, the Court finds that punitive damages may be available against Greenwalt in his individual capacity under § 1983, so the motion is also **DENIED IN PART** with respect to punitive

damages. Thus, Plaintiff may only seek punitive damages against Greenwalt in his individual capacity.

### V.    CONCLUSION

For the reasons discussed herein, the Court **DENIES** Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 18] as to Plaintiff's claim for negligent spoliation of evidence (Count IV). Defendant's Partial Motion to Dismiss [ECF No. 18] is **GRANTED** as to Plaintiff's claim for <u>Monell</u> liability (Count II). Defendant's Partial Motion to Dismiss [ECF No. 18] as to Plaintiff's claims for punitive damages is **GRANTED IN PART** and **DENIED IN PART**. The remaining claims in this matter are excessive use of force under 42 U.S.C. § 1983 (Count I), wrongful death (Count III), and negligent spoliation of evidence (Count IV).

It is so **ORDERED.**

The Clerk shall transmit copies of this Order to counsel of record by electronic means.

DATED: March 27, 2025

_Tom 8 Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

17